IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00816-KLM

PROCESS POINT ENERGY SERVICES, LLC,

     Plaintiff,

v.

GENERATOR SOURCE, LLC,

     Defendant.

_____

GENERATOR SOURCE, LLC,

     Third-Party Plaintiff,

v.

GULF AND WESTERN INDUSTRIES, LLC, and
CARLOS BUCHANAN,

     Third-Party Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Third-Party Defendants' **Motion to Dismiss Third-Party Plaintiff's Complaint** [#41][1] (the "Motion").  Third-Party Plaintiff filed a Response [#44] in opposition to the Motion [#41], and Third-Party Defendants filed a

_____

[1] "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

-1-

Reply [#45].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#41] is **DENIED**.[2]

## I.  Background

In October of 2019, Plaintiff Process Point Energy Services, LLC ("Process Point") bought a 400kw Caterpillar Diesel Generator (the "Generator") for one of its customers. *Compl.* [#1] at 1.  Process Point sent the Generator to Third-Party Defendant Gulf and Western Industries, LLC ("G&W") to perform custom fabrication and installation work on the Generator.  *Id*.  Both G&W and Process Point are Texas corporations.  *Id*.

On January 15, 2021, G&W allegedly sold the Generator to Defendant and Third-Party Plaintiff Generator Source, LLC ("Generator Source"), a Colorado corporation, for substantially less than Process Point had paid for it.  *Third-Party Compl.* [#34] at 2.  G&W represented that it owned and possessed the legal authority to sell the Generator, and Generator Source alleges that it was unaware that Process Point was the actual owner of the Generator.  *Id*.  Shortly after the sale, the Generator was shipped from G&W in Texas to Generator Source in Colorado.  *Id*.

On March 19, 2021, Process Point brought this action against Generator Source for immediate return of the Generator.  *Compl.* [#1] at 2.  Generator Source then brought two third-party claims against G&W and G&W's "employee and member" Carlos Buchanan, who signed the purchase agreement between the two companies.  *Third-Party*

---

[2]   This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#22, #23].

*Compl.* [#34] at 2-3.  Generator Source's claims are for breach of contract and for fraud "if and to the extent that the Court determines that [G&W had] no right, title and interest" in the Generator, and therefore had no authority to sell it.  *Id.* at 4-5.

In the present Motion [#41], Third-Party Defendants seek dismissal based on the Court's purported lack of personal jurisdiction.  In their Reply [#41], they also assert for the first time that the Court lacks subject matter jurisdiction over Generator Source's third-party claims.

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.  When reviewing a factual attack

on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.    Fed. R. Civ. P. 12(b)(2)**

The Court analyzes an argument that the Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  A plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).  Before trial, a plaintiff need only make a prima facie showing of jurisdiction.  *Id.*  The Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a prima facie showing that the defendants are subject to the Court's personal jurisdiction.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063,1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties."  *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004).  However, any factual disputes are resolved in the plaintiff's favor.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

### III.  Analysis

**A.    Subject Matter Jurisdiction**

In its Reply [#41], Third-Party Defendants raise for the first time in the briefing the issue of whether the Court has subject matter jurisdiction over Generator Source's claims, specifically contesting whether diversity jurisdiction exists, as Generator Source has pled. *Third-Party Compl.* [#34] at 3.

A plaintiff, or in this case, a third-party plaintiff, properly invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332 by presenting a claim between parties of diverse citizenship which exceeds the required jurisdictional amount, $75,000.   *See* U.S.C. § 1332(a); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).  Here, the amount-in-controversy is not at issue.  *See Third-Party Compl.* [#34] at 3 (stating that the allegedly fraudulent sale of the Generator was for $355,000).  However, G&W argues that because it is a Texas corporation, and Plaintiff Process Point is also a Texas corporation, there is not complete diversity of parties and therefore the Court lacks diversity jurisdiction.  *Reply* [#45] at 10-11.

The Court disagrees.  The United States Supreme Court has addressed this precise issue in *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66 n.1 (1996), where the Court stated:

> Once federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of each additional claim is to be assessed individually.  Thus, assuming that jurisdiction is based upon diversity of citizenship between [plaintiff] and [defendant], the question concerning impleader is whether there is a jurisdictional basis for the claim by [defendant/third-party plaintiff] against [third-party defendant].  The fact that [plaintiff] and [third-party defendant] may be co-citizens is completely irrelevant.  Unless [plaintiff] chooses to amend [its] complaint to assert a claim against [third-party defendant], [plaintiff] and [third-party defendant] are simply not adverse, and there need be no basis of jurisdiction between them.

(alterations in original) (quoting 3 J. Moore, Moore's Federal Practice ¶ 14.26, p. 14-116 (2d ed. 1996)).

Although Process Point has an active suit against G&W in Texas regarding the same events underlying the lawsuit here, Process Point has not brought a claim against G&W in this case, and therefore, the fact that they are co-citizens is "completely irrelevant." *Caterpillar Inc.*, 519 U.S. at 66 n.1. Because there is complete diversity between Process Point (of Texas) and Generator Source (of Colorado), and also complete diversity between Generator Source (of Colorado) and Third-Party Defendants (of Texas), the Court finds that it has diversity jurisdiction, and therefore subject matter jurisdiction, over this lawsuit.

Accordingly, the Motion [#41] is **denied** to the extent Third-Party Defendants seek dismissal on the basis of subject matter jurisdiction.

**B.    Personal Jurisdiction**

The exercise of personal jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements. *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). Colorado's long-arm statute "is to be interpreted as extending jurisdiction of our state courts to the fullest extent permitted by the due process clause of the United States Constitution." *Mr. Steak, Inc. v. Dist. Court in & for Second Judicial Dist.*, 194 Colo. 519, 521 (1978). Therefore, if jurisdiction is consistent with the due process clause, Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant. Under the due process

-6-

clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### 1.    Minimum Contacts

The "minimum contacts" test may be met by general jurisdiction or specific jurisdiction. *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019). Third-Party Plaintiff Generator Source affirmatively states that it is not alleging that personal jurisdiction exists under general jurisdiction. *Response* [#44] at 3. Thus, the Court turns directly to the issue of specific jurisdiction.

Specific jurisdiction may be asserted if a defendant has "purposefully directed" its activities toward the forum state, and if the lawsuit is based on injuries that "arise out of" or "relate to" the defendant's contacts with the state. *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070. Specific jurisdiction can arise from both purposeful direction in the form of contracts effecting the forum state, and from intentional conduct that has substantial harmful effects in the forum state. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). Here, Third-Party Plaintiff

asserts jurisdiction through purposeful direction arising from the contract with Third-Party Defendants and, as well as through the intentional harm arising from the fraud claim against Third-Party Defendants.  *See Response* [#44].

The Court looks to harmful effects on the forum state when assessing purposeful direction for tort-based claims, like the fraud claim here.  *Dental Dynamics, LLC v. Jolly Dental Grp., LLC.*, 946 F.3d 1223, 1231 (10th Cir. 2020).   Purposeful direction for intentional actions has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state.  *Dudnikov*, 514 F.3d at 1072.   These elements for analyzing minimum contacts under specific jurisdiction come from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding personal jurisdiction for a libel suit by a California resident against a Florida reporter when the forum state was the focal point of the intentional conduct).   Here, Third-Party Plaintiff argues that Third-Party Defendants' intentional misrepresentation of the ownership of the Generator provides for specific jurisdiction under the *Calder* test.

Third-Party Defendants do not contest that the alleged fraud is sufficient to cover the first element of the *Calder* test, as fraud is clearly an intentional action.  As for the second element, Third-Party Defendants argue that the alleged fraud is insufficient to establish purposeful direction because they did not make Colorado the focal point of the fraud, precluding the second step of the *Calder* test from being met.  *Reply* [#45] at 7.  In support, Third-Party Defendants cite *Walden v. Fiore*, 571 U.S. 277, 284 (2014), where the Supreme Court clarified the tort-based test to emphasize that the plaintiff cannot be

the only link between the defendant and the forum state, meaning that the defendant's conduct, not the plaintiff's, must be enough to establish minimum contacts with the forum state. *Reply* [#45] at 5. Here, Third-Party Defendants argue that Colorado is only related to the alleged fraud because Third-Party Plaintiff happens to be located here, and Third-Party Defendants have not formed sufficient links with the state, as they have not traveled to Colorado, done other business in Colorado, or plan to travel to or do business in Colorado in the future. *Id.* at 7. Further, Third-Party Defendants argue that the one-time purchase agreement is not enough to establish minimum contacts with Colorado. *Id.* Based on the following, however, the Court finds that Colorado was the focal point of the fraud, and therefore Third-Party Defendants do have minimum contacts with Colorado under the tort-based framework.

Third-Party Defendants are correct that a contract with an in-state plaintiff alone is not sufficient to create personal jurisdiction, and ties must be related to the defendant's conduct affecting the forum state. *Dental Dynamics*, 946 F.3d at 1230; *see also Burger King*, 471 U.S. at 472. However, the Court may assert jurisdiction over defendants who have purposefully reached out beyond their state and into another. *Old Republic*, 877 F.3d at 905; *see also Walden*, 571 U.S. at 285. To determine whether the alleged tortious conduct is aimed at the forum state, the Court looks to whether that state was the focal point of the conduct. *Dudnikov*, 514 F.3d at 1075.

In this case, Third-Party Defendants' conduct goes beyond simply contracting with a company that happens to be based in Colorado. Third-Party Defendants contracted with Generator Source knowing the company is located in Colorado and agreed to ship

-9-

the Generator to Colorado.  Further, the purchase agreement specifically designates the sale of the Generator and the performance of the contract as occurring in Colorado. Third-Party Defendants should have anticipated that the Generator was going to be used in Colorado and any issues with the Generator would occur in Colorado. The purchase agreement also designates Colorado law to be controlling should any issue arise. The alleged fraud itself caused damage in Colorado, and Third-Party Defendants should have anticipated that the alleged misrepresentation was likely to cause an ownership battle that might force the Generator to be removed from Colorado and returned to Texas, thus injuring a Colorado corporation.  The performance, injury, and effect of the alleged fraud all occurred in Colorado, just as in *Calder* where California was found to be the clear focal point of libel which affected a California resident.

Third-Party Defendants assert that they "never traveled to Colorado, never intended on traveling to Colorado and did not believe [G&W] would conduct business again in Colorado[;] [that they only] entered into a one-time purchase agreement with Generator Source[;] [and that] the fact that Generator Source happened to be in Colorado is ancillary and not relevant to the Parties' Agreement."  *Reply* [#45] at 7.  However, in *Haliburton Co. v. Texana Oil Co., Inc.*, 471 F. Supp. 1017, 1019 (D. Colo. 1979), the court found that even when negotiations happen outside of Colorado, such as through telephone conversations, if the transaction forming the basis for the action took place in Colorado and caused important business consequences to occur in Colorado, then personal jurisdiction in Colorado is appropriate.  Therefore, the lack of Third-Party

Defendants' physical presence in Colorado is inconsequential, as the important inquiry is whether the underlying transaction at issue occurred in Colorado, which it did in this case.

In addition, Third-Party Defendants cite *BlueRadios, Inc. v. Datacolor, Inc.*, No. 19-cv-00341-REB-NRN, 2019 WL 1596123 (D. Colo. Apr. 12, 2019), claiming that a one-time sale is not enough to establish personal jurisdiction, and a long-term agreement for multiple items is needed.[3]   However, *BlueRadios* supports a finding of personal jurisdiction in this case.  While Third-Party Defendants are correct that in *BlueRadios* the court found the multitude of items purchased evidenced a long-lasting relationship, the court's focus was on whether there were enough ties created through the contract to allow the defendant "to know that it could be haled into court in Colorado."  *BlueRadios, Inc.*, 2019 WL 1596123, at *7.  The court found that the contractual terms, including technical assistance, warranty services, designation of Colorado law as controlling, and the clear communication that the plaintiff was located in Colorado, were enough to put the defendant on notice that it could be haled into Colorado court, and therefore that personal jurisdiction was appropriate in Colorado.  *Id*.  All of those elements exist in the purchase agreement in this case, making Colorado the focal point of the alleged fraud, and putting Third-Party Defendants on notice that they could be haled into court in Colorado.  Thus, the Court finds that the second element of the *Calder* test for establishing personal jurisdiction has been met here.

---

[3] The Court notes that, while *BlueRadios* focuses on personal jurisdiction and contract law, rather than tort law, the Court finds it persuasive in concluding that fraud related to a one-time contract may be sufficient to demonstrate the focal point of a tort for purposes of finding personal jurisdiction.

Regarding the third element of the *Calder* test, and as alluded to earlier, Third-Party Defendants knew or should have known that the brunt of any alleged fraud would be felt in Colorado.   According to the Complaint, Third-Party Defendants falsely represented owning the Generator, and then sold and shipped it to Third-Party Plaintiff, knowing it was to be used in Colorado.  The misrepresentation would clearly affect Third-Party Plaintiff, as it likely would not have purchased a generator it knew G&W had no right to sell.  Further, it is obvious that an ownership battle would likely ensue from Third-Party Defendants' alleged fraud, and the effects of that legal battle would affect Colorado.  A Colorado corporation would be forced into a legal battle due to Third-Party Defendants' fraud, and the Generator that is now being used in Colorado is at risk of being returned to a Texas corporation by court order.  *See Ruggieri v. Gen. Well Serv., Inc.*, 535 F. Supp. 525, 536 (D. Colo. 1982) (holding that affirmative misrepresentation intending to induce, and actually inducing reliance, and which caused harm in Colorado is enough to establish personal jurisdiction); *see also Jenner & Block v. Dist. Ct. in & for City & Cty. of Denver*, 590 P.2d 964, 966 (1979).

This case is similar to *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063,1070 (10th Cir. 2008), where the Tenth Circuit found a company asserting a wrongful trademark claim which shut down the auction of a Colorado company was enough to establish personal jurisdiction.  In that case, even though the defendants sent their correspondence to California and otherwise had no ties to Colorado, the Tenth Circuit found the alleged tort to be enough to establish personal jurisdiction because the defendants knew their actions would stop business from occurring in Colorado.  Here,

Third-Party Defendants should have known that the impact of their alleged fraud would affect the business of Third-Party Plaintiff in Colorado.  One of the main determinations regarding personal jurisdiction is whether "the defendant's conduct and connection to the forum State are such that [it] should reasonably anticipate being haled into court there." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291(1980).  Here, Third-Party Defendants should have been aware of the risk of being haled into court in Colorado, evidenced by their agreement in the transaction that Colorado law is controlling, the likelihood of harm occurring in Colorado, and the purchase agreement designating performance of the contract to have occurred in Colorado.

In order to exercise specific jurisdiction over a claim, the Court must determine whether the plaintiff's injuries arise out of the defendant's forum-related activities, meaning there must be an affiliation between the forum and the underlying controversy. *Old Republic*, 877 F.3d at 908; *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).  In this case, there is a clear affiliation between the alleged fraud surrounding the contract for the sale and shipment of the Generator to Colorado, and the forum state of Colorado.

Because the Court finds that all three elements of the *Calder* test have been met, the Court finds that minimum contacts between Third-Party Defendants and Colorado have been established.

**2.    Traditional Notions of Fair Play and Substantial Justice**

Additionally, for the reasons stated below, the Court finds that exercising jurisdiction over Third-Party Defendants does not "offend traditional notions of fair play and substantial justice." *Impact Prods. Inc. v. Impact Prods.*, *LLC,* 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004). Regarding "traditional notions of fair play and substantial justice," courts consider:

> (1) the burden on the defendant[s], (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted). The Court addresses each of these factors in turn.

First, the Court's exercise of jurisdiction over Third-Party Defendants would not create an undue burden. Third-Party Defendants argue that they would be unduly burdened by having to travel to Colorado for this litigation, but "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . . [I]n this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted). Third-Party Defendants have not asserted any such "highly unusual" circumstances here. Therefore, the Court finds that requiring Third-Party Defendants to travel from Texas to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*

*v. Royal Ins. Co. of Canada*,149 F.3d 1086, 1096 (10th Cir. 1998). Third-Party Plaintiff alleges that Third-Party Defendants fraudulently misrepresented their ownership and ability to sell the Generator at issue here. The purchase agreement designated the performance of the contract as occurring in Colorado, and the injury to Third-Party Plaintiff also allegedly occurred in Colorado. Colorado clearly has an interest in providing a forum for Third-Party Plaintiff to seek redress for an alleged intentional tort that took place in Colorado.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id*. at 1080 (quotations and citation omitted). In this case, Third-Party Plaintiff could receive effective, albeit less convenient relief in Texas. However, the Court finds that Colorado is the most efficient forum to litigate this dispute because Third-Party Plaintiff resides in Colorado, the contract was performed in Colorado, the Generator is located in Colorado, and the injury occurred in Colorado. Further, it is more efficient for Colorado to handle the claims by Generator Source in the same case as the original case between Generator Source and Process Point, rather than having Generator Source file a new lawsuit in Texas and having three separate cases (including the current case between Process Point and G&W in Texas) regarding the same issue. Generator Source is not a party to the Texas case, and Process Point chose to instead bring this suit in Colorado; thus, Colorado is the most efficient forum for the Third-Party Complaint [#34] at issue here. Therefore, the third and

fourth factors weigh in favor of exercising personal jurisdiction over Third-Party Defendants in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other state or foreign nations." *Id.* (quotations and citations omitted). While Texas does have an interest in breach of contract claims involving its citizens, allowing the state where the alleged breach of the contract occurred and where the injury was sustained to exercise personal jurisdiction furthers the policy interest of all states. Allowing personal jurisdiction to be exercised in the forum state where alleged intentional torts were aimed also furthers the policy interest of all states, as every state will want to be able to protect its citizens from intentional torts from out-of-state actors.

Thus, weighing the relevant factors, the Court finds that exercising jurisdiction over Third-Party Defendants does not "offend traditional notions of fair play and substantial justice" and that the Court may exercise personal jurisdiction over non-resident Third-Party Defendants. Accordingly, the Motion [#41] is **denied** to the extent Third-Party Defendants seek dismissal on the basis of personal jurisdiction.

## IV.  Conclusion

Based upon the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#41] is **DENIED**.

Dated: April 19, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge